IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-02375-DME

ALICE DIEHL-CAINE,

      Applicant,

v.

LAURIE TAFOYA, Warden, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.

---

ORDER ON APPLICATION FOR A WRIT OF HABEAS CORPUS
PURSUANT TO 28 U.S.C. § 2254

---

David M. Ebel, Senior Circuit Judge.

      This matter is before me on Applicant Alice Diehl-Caine's *pro se*[1] Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254, filed on September 12, 2011.[2] Respondents have filed an Answer,[3] and Applicant has filed a Traverse.[4]  Having considered the same, along with the state court record, I conclude that the Application should be denied.

---

[1]Applicant is proceeding *pro se*.  I, therefore, "review her pleadings and other papers liberally and hold them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).  However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991).  I may not assume that the Applicant can prove facts that have not been alleged or that the Respondents have violated laws in ways that Applicant has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

[2]Doc. No. 1.

[3]Doc. No. 18.

[4]Doc. No. 19.

## I. Background

On August 30, 2005, a jury in the Mesa County District Court in Grand Junction,

Colorado ("the trial court"), Case No. 02CR454, convicted Applicant of one count of theft

by receiving, three counts of giving false information to a pawn broker, one count of

criminal impersonation, and one count of unauthorized use of a financial transaction

device.[5]  The pertinent facts were summarized by the Colorado Court of Appeals as

follows:

> [Applicant] was stopped by police because the make of the car she was
> driving did not match the registration information for the license plate.
> Officers arrested defendants and searched her car.  Inside, they found a
> day planner containing several pawn slips and a checkbook that had been
> reported stolen.  They also found several small baggies containing a white
> residue and a box containing suspected methamphetamine.[6]

The trial court adjudicated Applicant a habitual offender[7] and sentenced her to an

aggregate prison term of twenty-four years with the Colorado Department of

Corrections.[8]

The Colorado Court of Appeals affirmed Applicant's conviction on direct appeal.[9]

The Colorado Supreme Court denied certiorari review on March 22, 2010.[10]

---

[5]State Court R., Court File, vol. 1, at 447.

[6]*People v. Diehle-Caine*, No. 06CA0485 (Colo. App. Jan. 17, 2008) (unpublished opinion)*,* Doc.
No. 18-1, at 1-2.

[7]State Court R., 11/21/05 Hrg. Tr., at 28-35.

[8]State Court R., 1/23/06 Sentencing Hrg. Tr.

[9]Doc. No. 18-1.

[10]Doc. Nos. 5-6, 5-7.

Applicant filed a motion for post conviction relief pursuant to Colo. Crim. P. 35(c) on September 28, 2008, which the trial court denied on December 11, 2008.[11]  The Colorado Court of Appeals affirmed the trial court's order.[12]  The Colorado Supreme Court denied Applicant's request for certiorari review on May 31, 2011.[13]

## II.  Habeas Claims

Applicant filed her § 2254 Application on September 9, 2011.  She asserts two claims in the Application: (1) ineffective assistance of trial counsel based on counsel's "fail[ure] to present exculpatory evidence, call witnesses, do pre-trial investigation and make any objections at trial";[14] and, (2) the trial court violated her Sixth Amendment right to trial by jury when the court adjudicated her a habitual criminal.[15]

Applicant filed an "Opening Brief"[16] in which she clarifies the basis for her ineffective assistance of counsel claims.  She asserts that counsel was ineffective in failing to: call the Applicant's husband as a witness at trial to testify that the tools belonged to him and were not stolen (claim (1)(a)); investigate and present evidence about the value of the tools that were recovered from the pawn shops (claim (1)(b));

---

[11]Doc. No. 9-1.

[12]*People v. Diehl-Caine*, 09CA0168 (Colo. App. Jan. 20., 2011) (unpublished), Doc. No. 5-4.

[13]Doc. No. 5-2.

[14]Doc. No. 1, at 11 of 25.

[15]*Id.* at 12 of 25.

[16]Doc. No. 7.

and, in failing to object to the expert testimony of three pawn shop witnesses about the value of the tools (1)(c).[17]

## III. Exhaustion of State Court Remedies and Procedural Default

Upon preliminary review of the Application, Magistrate Judge Boyd N. Boland ordered the Respondents to file a pre-answer response addressing the affirmative defenses of timeliness and exhaustion of state remedies.  Respondents concede that the action is timely under the AEDPA.[18]  Respondents further concede,[19] and I so find, that Applicant has exhausted state remedies for claims (1)(a), (1)(b), and claim two. In addition, the record reflects that Applicant presented to the Colorado Court of Appeals a claim that trial counsel was ineffective in failing to provide the trial court with evidence to substantiate the defense motion to disqualify the District Attorney's office from representing the State (claim (1)(d)).[20]  The state appellate court denied this claim on the merits.[21]  Because this claim was exhausted properly in the state courts, I will review it on the merits below.

Respondents argue in their Answer that Applicant has procedurally defaulted claim (1)(c).[22]  Pursuant to 28 U.S.C. § 2254(b)(1), an application for a writ of habeas corpus may not be granted unless it appears that the applicant has exhausted state

---

[17] *Id.*

[18] Doc. No. 5, at 6 of 15.

[19] *Id.*, at 10-11 of 15.

[20] Doc. No. 5-6, at 16-19 of 27.

[21] Doc. No. 5-4, at 7-8 of 13.

[22] Doc. No. 18, at 15-16 of 24.

remedies or that no adequate state remedies are available or effective to protect the applicant's rights.[23]  The exhaustion requirement is satisfied once the federal claim has been presented fairly to the state courts.[24]  Fair presentation requires that the federal issue be presented properly "to the highest state court, either by direct review of the conviction or in a post-conviction attack."[25]

Furthermore, the "substance of a federal habeas corpus claim" must have been presented to the state courts in order to satisfy the fair presentation requirement.[26]  A claim must be presented as a federal constitutional claim in the state court proceedings in order to be exhausted.[27]  Finally, "[t]he exhaustion requirement is not one to be overlooked lightly."[28]  A state prisoner bringing a federal habeas corpus action bears the burden of showing that he has exhausted all available state remedies.[29]

A claim that has been procedurally defaulted in the state courts on an independent and adequate state procedural ground is precluded from federal habeas review, unless the prisoner can demonstrate cause for the default and actual prejudice

---

[23] *See O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Dever v. Kansas State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994).

[24] *See Castille v. Peoples*, 489 U.S. 346, 351 (1989).

[25] *Dever*, 36 F.3d at 1534.

[26] *Picard v. Connor*, 404 U.S. 270, 278 (1971); *see also Nichols v. Sullivan*, 867 F.2d 1250, 1252 (10th Cir. 1989).

[27] *See Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) (per curiam).

[28] *Hernandez v. Starbuck*, 69 F.3d 1089, 1092 (10th Cir. 1995).

[29] *See Miranda v. Cooper*, 967 F.2d 392, 398 (10th Cir. 1992).

5

as a result of the federal violation, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice.[30]

The Colorado Court of Appeals declined to address claim (1)(c) in the state post-conviction proceeding on the ground that the issue was not presented adequately for review.[31]  Respondents argue that because the state appellate court applied a procedural bar to reject the claim, Applicant is not entitled to a merits review of claim (1)(c) in this federal habeas proceeding.[32]  I find and conclude that Applicant has defaulted claim (1)(c) in the state courts pursuant to a state procedural rule.[33]  Applicant therefore may seek review in this court only if she can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."[34]  Applicant filed a Traverse to the Respondents' Answer, but she did not allege any specific facts to satisfy the cause and prejudice standard or the fundamental

---

[30]*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Cummings v. Sirmons*, 506 F.3d 1211, 1224 (10th Cir. 2007).

[31]Doc. No. 5-4, at 10-11 of 13 and n.1 (observing that Applicant failed to "present[ ] references to supporting facts in the record, specific arguments, or legal authority to support her contentions.")

[32]Doc. No. 18, at 16.

[33]*See Trujillo v. Ploughe,* No. 11-1436, 2012 WL 375519 (10th Cir. Feb. 7, 2012) (unpublished) (affirming district court's conclusion that claim was procedurally defaulted where state appellate court refused to address issue on ground that the petitioner failed to allege any facts, argument or authority to support it); *Rodriguez v. Zavaras,* 42 F.Supp.2d 1059, 1079 (D.Colo.1999) (finding procedural default of a claim when the issues raised in a 35(c) motion failed to inform the court as to the grounds, supporting facts, and authorities therefor); Colo.App. R. 28(b)(4) ("The argument shall contain the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes, and parts of the record relied on.").

[34]*Coleman*, 501 U.S. at 750.

miscarriage of justice exception.  Accordingly, I will dismiss claim (1)(c) as procedurally barred.

I review the merits of claims (1)(a), (1)(b), (1)(d), and claim two below.

## IV. Legal Standard

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.[35]

Applicant bears the burden of proof under § 2254(d).[36]

I review claims of legal error and mixed questions of law and fact pursuant to 28 U.S.C. § 2254(d)(1).[37]  The threshold question I must answer under § 2254(d)(1) is whether Applicant seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final.[38]  Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."[39]  Furthermore,

---

[35] 28 U.S.C. § 2254(d).

[36] See Woodford v. Visciotti, 537 U.S. 19, 25 (2002) (per curiam).

[37] See Cook v. McKune, 323 F.3d 825, 830 (10th Cir. 2003).

[38] See Williams v. Taylor, 529 U.S. 362, 390 (2000).

[39] Id. at 412.

clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case sub judice. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.[40]

If there is no clearly established federal law, that is the end of my inquiry pursuant to § 2254(d)(1).[41] If a clearly established rule of federal law is implicated, I must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law.[42]

A state court decision is "contrary to" clearly established Federal law if it "'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a different result from [Supreme Court] precedent.'"[43] A state court decision involves an "unreasonable application" of clearly established Federal law when "'the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the Applicant's case.'"[44] "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. . . . The state court's application of clearly established law must be objectively unreasonable."[45] Under this

---

[40] *House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).

[41] *See id.* at 1018.

[42] *See Williams*, 529 U.S. at 404–05.

[43] *Price v. Vincent*, 538 U.S. 634, 640 (2003) (quoting *Williams*, 529 U.S. at 405–06).

[44] *Lockyer v. Andrade*, 538 U.S. 63, 75 (2005) (quoting *Williams*, 529 U.S. at 413).

[45] *Id.* (citing *Williams*, 529 U.S. at 409–10, 412).

standard, "only the most serious misapplications of Supreme Court precedent will be a

basis for relief under § 2254."[46]

> As a condition for obtaining habeas corpus from a federal court, a state
> prisoner must show that the state court's ruling on the claim being
> presented in federal court was so lacking in justification that there was an
> error well understood and comprehended in existing law beyond any
> possibility for fairminded disagreement.[47]

Moreover, "review under § 2254(d)(1) is limited to the record that was before the state

court that adjudicated the claim on the merits."[48]

Finally, when analyzing the Application, all determinations of factual issues by the

state court are presumed to be correct and the Applicant has the "burden of rebutting

the presumption of correctness by clear and convincing evidence."[49]"[W]hether a state

court's decision was unreasonable must be assessed in light of the record [that court]

had before it."[50]

## V.  Analysis

## A.  Ineffective Assistance of Counsel Claims

In claims (1)(a), (1)(b), and (1)(d), Applicant asserts that her trial counsel was

ineffective in failing to: call the Applicant's husband as a witness at trial to testify that the

tools belonged to him and were not stolen (claim (1)(a)); investigate and present

evidence about the value of the tools that were recovered from the pawn shops (claim

---

[46]*Maynard*, 468 F.3d at 671; *see also Richter*, 131 S.Ct. at 786 (stating that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable").

[47]*Harrington v. Richter*, ___ U.S. ___ , 131 S.Ct. 770, 786-87 (2011).

[48]*Cullen v. Pinholster*, ___ U.S. ___, 131 S.Ct. 1388, 1398 (2011).

[49]28 U.S.C. § 2254(e)(1).

[50]*Holland v. Jackson*, 542 U.S. 649, 651–52 (2004) (per curiam ) (citations omitted).

(1)(b)); and, in failing to provide the trial court with information to substantiate the defense motion to disqualify the District Attorney's office from representing the State (claim (1)(d)).

To prevail on her claims of ineffective assistance of counsel, Applicant must show that: (1) counsel's legal representation fell below an objective standard of reasonableness; and (2) "the deficient performance prejudiced the defense."[51] Judicial scrutiny of counsel's performance is highly deferential.[52] Counsel's decisions are presumed to represent "sound trial strategy;" "[f]or counsel's performance to be constitutionally ineffective, it must have been completely unreasonable, not merely wrong."[53] Under the AEDPA standard of review, "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."[54]

Prejudice exists when there is a reasonable probability that, but for counsel's defective representation, the result of the proceeding would have been different.[55] The likelihood of a different result must be substantial, not just conceivable.[56] I need not address both prongs of the *Strickland* inquiry if Applicant's claim fails on one.[57]

---

[51] *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).

[52] *Id.* at 689.

[53] *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999) (internal quotations omitted).

[54] *Harrington*, 131 S.Ct. at 788.

[55] *Strickland*, 466 U.S. at 693.

[56] *Id.*

[57] *Id.* at 697.

### 1. *failure to call husband as a witness at trial*

In claim (1)(a), Applicant asserts that counsel was ineffective in failing to call her

husband as a witness at trial to testify that the tools belonged to him and were not

stolen.  "[T]he decision of which witnesses to call is quintessentially a matter of

strategy."  *Boyle v. McKune*, 544 F.3d 1132, 1139 (10th Cir. 2008).

The state appellate court applied the *Strickland* standard,[58] and rejected

Applicant's claim on the following grounds:

> Diehl-Caine contends that defense counsel provided ineffective
> assistance in failing to call her husband to testify that the tools she
> pawned actually belonged to him.  We perceive no error.
>
> Here, overwhelming evidence supports the trial court's ruling and
> the jury's conclusion that the tools were stolen from the victim.  At trial, the
> prosecution elicited testimony from the victim, who stated that several
> power tools and a checkbook had been stolen from his storage unit.  The
> stolen tools were later recovered from three pawnshops, and the victim
> identified the tools as his own.  Upon Diehl-Caine's arrest, police officers
> found the victim's checkbook inside Diehl-Caine's car, and evidence was
> presented that she had fraudulently used the victim's credit card number.
> Diehl-Caine pawned tools identical to those stolen from the victim and
> signed the pawn slips in her own name.  As a result, circumstantial
> evidence may support the conclusion that the tools belonged to Diehl-
> Caine's husband, but there is still overwhelming evidence to support the
> jury's conclusion that the tools were stolen from the victim.  Testimony
> from Diehl-Caine's husband would have had an "isolated, trivial effect," in
> the context of the "entire evidentiary picture."  *Strickland*, 466 U.S. at 696.
> Thus, Diehl-Caine has not shown she was prejudiced by her husband not
> testifying.  Accordingly, the trial court did not err when it rejected Diehl-
> Caine's claim of ineffective assistance of counsel for failure to call her
> husband as a witness.[59]

---

[58]Doc. No. 5-4, at 4-5 of 13.

[59]*Id.* at 6-7.

The state court's factual findings are presumed correct in this federal habeas proceeding and are supported by the state court record.[60]  Applicant has not pointed to any clear and convincing evidence to contradict those findings.  Further, Applicant has not offered any evidence indicating how her husband would actually have testified if presented as a witness.  Applicant never proffered to the state courts an affidavit from her husband.  Moreover, even assuming that the husband would have testified that the tools recovered from the pawn shops belonged to him, it is unclear whether he would have been a credible witness.  As recognized by the Colorado Court of Appeals, significant evidence supported the jury's verdict that the tools Applicant pawned were taken from the victim's storage shed.  Accordingly, it is doubtful whether any testimony from the husband regarding his ownership of the tools would have prompted the jury to reach a different verdict.  I find and conclude that the state appellate's court resolution of Applicant's claim under the prejudice prong of *Strickland* was reasonable.  Applicant thus cannot prevail on claim (1)(a).

## 2. *Failure to present evidence concerning the value of the tools*

In claim (1)(b), Applicant alleges that counsel was ineffective in failing to investigate and present evidence at trial from an impartial source concerning the value of the tools recovered from the pawn shops.  Applicant maintains that she was prejudiced by the omitted evidence because the estimates of tool values given by the Government's witnesses made her crimes a felony.[61]

---

[60]*See generally* State Court R., 8/29/05 Trial Tr., at 30-69.

[61]Doc. No. 5-8, at 20 of 33.

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgment."[62]

At trial, the victim testified that the tools belonged to him.[63]  The victim further valued the tools as follows: cordless drill (estimated fair market value of $75.00-$85.00); four-foot level (estimated purchase price of $130.00-$140.00); field level (estimated fair market value of $300.00-$350.00); Skil saw (estimated purchase price of $65.00); Makita grinder (estimated purchase price of $70.00-$80.00); Makita chop saw (estimated fair market value of $50.00 - $60.00); and, a Craftsman router (no estimate given).[64]  One pawn shop witness testified that the estimated combined fair market value of the four tools presented to him for resale was $250.00-$300.00.[65]  A second pawn shop witness was unable to estimate the combined fair market value of the cordless drill and the four-foot level, but he sold both items for $30.00.[66]  A third pawn shop witness valued the field level at $250.00.[67]

Applicant argued to the state appellate court that trial counsel should have called an impartial witness from Sears or from a different pawn shop to refute the victim's

---

[62] *Strickland*, 466 U.S. at 691.

[63] State Court R., 8/29/05 Trial Tr., at 42-45.

[64] *Id.*

[65] *Id.,* 08/30/05 Trial Tr., at 9.

[66] *Id.* at 19-20.

[67] *Id.* at 24.

testimony concerning the purchase price value of some of the tools, instead of the fair

market value at the time the tools were pawned.[68]

Applying the *Strickland* standard,[69] the Colorado Court of Appeals resolved this

claim against Applicant on the following grounds:

> Diehl-Caine contends that defense counsel provided ineffective
> assistance in failing to investigate and present evidence "from an impartial
> source" about the cost of the tools stolen from the victim.  We disagree.
>
> The prosecution must prove the value of the stolen items beyond a
> reasonable doubt. [state law citation omitted].  An owner is always
> competent to testify as to the value of his or her property for purposes of
> prosecuting theft. [*Id.*] The testimony must relate to the value of the
> property at the time of the commission of the crime. [*Id.*].
>
> Diehl-Caine has not shown that she was prejudiced by her lawyer's
> failure to provide evidence from an impartial source regarding the value of
> the tools.  Here, the prosecution presented testimony from the victim that
> the value of the tools exceeded $500 or more. [*Id.*] Accordingly, the trial
> court did not err when it rejected Diehl-Caine's claim that defense counsel
> failed to show evidence of the aggregate cost of the tools as less than
> $500.  Even if defense counsel had presented such evidence, Diehl-Caine
> has not shown that it would likely have changed the result.[70]

Again, the state appellate court's factual findings are correct and are supported

by the evidence presented at trial.  The victim testified that the combined fair market

value of three of the seven tools pawned was approximately $425.00-$495.00.  Two of

the pawn shop witnesses valued five of the tools at a fair market value exceeding

$500.00.  In addition, the pawn shop witnesses testified that the value of the tools was

---

[68]Doc. No. 5-6, at 22-24 of 27; *see also* Doc. No. 7, at 13-14 of 15.

[69]Doc. No. 5-4, at 6-7 of 13.

[70]Doc. No. 5-4, at 9-10 of 13.

at least half of the purchase price.[71]  This evidence was sufficient to support the jury's

verdict that Applicant was guilty of a class 4 felony, under § 18-4-410(4) (2004).[72]

Moreover, Applicant did not provide the state courts with an affidavit from a Sears

employee or from a different pawn shop employee as to the value of the tools.  As such,

her assertion that a defense witness would have placed the fair market value of the

tools below $500.00, and that the jury would have acquitted her based on that

testimony, is premised on speculation and conjecture, which cannot support the

prejudice prong of the *Strickland* inquiry.[73]  I find and conclude that the Colorado Court

of Appeals reasonably applied *Strickland* in resolving Applicant's claim.  Applicant

therefore is not entitled to federal habeas relief for claim (1)(b).

### 3.  *Failure to support motion to disqualify prosecutor*

Finally, in claim (1)(d), Applicant asserts that trial counsel was ineffective in

failing to provide the trial court with evidence to substantiate the defense motion to

disqualify the District Attorney's office from presenting the State's case.

---

[71]State Court R., 8/30/05 Trial Tr., at 9, 18, 24-25.

[72]At the time of Applicant's conviction, Section 18-4-410(1), C.R.S. (2004), stated:  "[A] person commits theft by receiving when [s]he receives, retains, . . .or disposes of anything of value of another, knowing or believing that said thing of value has been stolen, and when [s]he intends to deprive the lawful owner permanently of the use or benefit of the thing of value."  Under the former statute, where the value of the thing involved exceeded $500, but was less than $15,000, the offense was a class four felony. § 18-4-410(4).  If the value of the thing involved was less than $500, the offense was a class two misdemeanor. §18-4-410(3) .

[73]*See United States v. Boone*, 62 F.3d 323, 327 (10th Cir.1995) ("[A]ll that the Defendant urges is speculation, not a reasonable probability that the outcome would have been different); *see also Turrentine v. Mullin,* 390 F.3d 1181, 1205 (10th Cir. 2004) (petitioner "must show more than that his counsel's action had 'some conceivable effect on the outcome of the proceeding,' because '[v]irtually every act or omission of counsel would meet that test,'" quoting *Strickland*, 466 U.S. at 693 (alteration in original)).

The Colorado Court of Appeals rejected this claim in the state post-conviction proceeding based on the following reasoning:

> Diehl-Caine contends that defense counsel rendered ineffective assistance in failing to present evidence to the trial court to support her motion to disqualify the prosecution, specifically, that Deputy District Attorney Jon Levin visited Diehl-Caine in jail, where they discussed her pending case. Because Diehl-Caine did not establish that Levin's visit caused prejudice pursuant to *Strickland v. Washington*, we disagree.
>
> Here, Levin visited Diehl-Caine at the Mesa County Jail. As the trial court properly noted, Diehl-Caine's motion to disqualify was supported by her affidavit in which she alleged that Levin met with her in the jail, but did not allege that he discussed the details of the present case with her. Further, as the *Diehl-Caine I* division noted, Levin submitted a responsive affidavit to the motion to disqualify in which he specifically denied that he and Diehl-Caine had discussed her pending cased during the visit. Thus, Diehl-Caine cannot establish prejudice under *Strickland*, because her current assertions are insufficient to show that a different result would have been likely had her trial counsel presented additional evidence in her behalf.[74]

In order to succeed on his ineffective assistance of counsel claim, Applicant must show that the motion to disqualify the district attorney's office and the particular attorney who was prosecuting her was meritorious.[75] The state appellate court held on direct appeal of Applicant's conviction that the record before the state trial court failed to demonstrate that disqualification of the District Attorney's Office was compelled by § 20-1-107, C.R.S., to protect Applicant's right to a fair trial.[76] Applicant does not challenge that ruling here. Furthermore, the state appellate court's factual findings that

---

[74]Doc. No. 5-4, at 7-8 of 13.

[75]*See Kimmelman v. Morrison*, 477 U.S. 365, 375, 382 (1986) (where alleged ineffective assistance claim is based on counsel's failure to file a motion to suppress, petitioner must show that the underlying claim supporting motion has merit); *accord Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003) (appellate counsel's failure to raise a meritless issue on direct appeal does not constitute defective performance).

[76]*See* Doc. No. 18-1.

there was no evidence before the trial court to show that the deputy district attorney discussed Applicant's cases during the jail visit are presumed correct.  Although Applicant now maintains that her counsel failed to provide the state trial court with additional evidence to substantiate the motion to disqualify, she does not articulate any details about the nature of the evidence or explain how it would have changed the state trial court's ruling.  As such, she has failed to demonstrate that the additional evidence would have rendered her motion to disqualify meritorious.  Further, as the state courts recognized, even if trial counsel rendered substandard performance with regard to the motion to disqualify, the result would have been the appointment of a new prosecutor, not a change in the outcome of Applicant's trial.[77] I find and conclude that the state appellate court's resolution of Applicant's claim was consistent with *Strickland*.  Claim (1)(d) therefore will be denied.

## B.  *Apprendi* claim

Applicants asserts in claim two that the trial court violated her Sixth Amendment right to trial by jury when the court adjudicated her a habitual criminal.

In *Apprendi v. New Jersey*, 530 U.S. 455, 490 (2000), the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  The Court's exclusion of prior convictions from the general rule was based on its prior decision in *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), which held that recidivism need not be charged in an indictment in

---

[77]Doc. No. 5-4, at 8 of 13.

17

order for a judge to use prior convictions to enhance a defendant's sentence.  *Apprendi*, 530 U.S. at 487-88.  The *Apprendi* Court mentioned the possibility that *Almendarez-Torres* may have been "incorrectly decided."[78]  However, the Supreme Court has not overruled *Almendarez-Torres*.[79]

In the state post-conviction proceeding, the Colorado Court of Appeals determined that Applicant's second claim was without merit, based on the "prior conviction" exception in *Apprendi*.[80]  I find and conclude that the state appellate court's determination that Applicant did not have a constitutional right to a jury trial on the habitual offender charges was consistent with applicable Supreme Court law.  Applicant thus cannot prevail on her second claim.

**IV. Order**

Accordingly, it is

---

[78]*Apprendi*, 530 U.S. at 489.

[79]*See e.g. United States v. Booker*, 543 U.S. 220, 244 (2005) (reaffirming the recidivism exception announced in *Apprendi* ); *see also United States v. Stiger*, 413 F.3d 1185, 1192 (10th Cir. 2005) (rejecting argument that *Apprendi* requires the jury, rather than the judge, to determine whether he had prior felony convictions).

[80]Doc. No. 5-4, at 5 of 13.

ORDERED that Applicant Alice Diehl-Caine's Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (Doc. No. 1), filed September 12, 2011, is denied and this action is dismissed with prejudice.  It is

FURTHER ORDERED that a certificate of appealability shall not issue because Applicant has not made a substantial showing of the denial of a constitutional right.[81]

Finally, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status will be denied for the purpose of appeal.  *See Coppedge v. United States*, 369 U.S. 438 (1962).  If Applicant files a notice of appeal she must also pay the full $455 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24. Accordingly, it is

FURTHER ORDERED that leave to proceed *in forma pauperis* on appeal is denied.

Dated at Denver, Colorado, this __25th__ day of ___April___, 2012.

BY THE COURT:

*s/ David M. Ebel*

_____
David M. Ebel
Senior Circuit Judge

---

[81]28 U.S.C. § 2253(c)(2); Fed. R. Governing Section 2254 Cases 11(a); *Slack v. McDaniel*, 529 U.S. 473, 483–85 (2000).